# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UMB BANK, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11-1215-DJW |
| | ) |
| KANZA BANK, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is currently before the Court pursuant to the Trustee's Motion for Directed Reference to the United States Bankruptcy Court for the District of Kansas (Doc. 44). The matter is fully briefed and the Court is prepared to rule. As set forth more fully below, the Court finds that the motion should be granted.

**I.  Background**

Plaintiff, UMB Bank, N.A., as Trustee ("Trustee") under the Indenture dated January 1, 2005 (the "Indenture"), filed its Complaint against defendant KANZA Bank ("Defendant"), for resolution of an existing dispute concerning the alleged demand by the Defendant that the Trustee pay it, to the detriment of other bond owners, the outstanding principal amount of certain Healthcare Facility Revenue Bonds owned by the Defendant after the occurrence of an event of default by the obligor under the Indenture under which the bonds were issued.[1] The Trustee seeks a declaratory judgment to determine whether payment by the Trustee to the Defendant is required by the Indenture and seeks reimbursement of fees and expenses as required by the

---

[1] Doc. 1.

Indenture. Defendant filed an Answer and Counterclaims, including counts for breach of contract, declaratory judgment, breach of fiduciary duty and breach of trust pursuant to the Kansas Uniform Trust Code.[2] Neither party demanded a jury trial and the case is scheduled for trial to the court.[3] Both parties consented to have a United States magistrate judge conduct all proceedings in this case.[4] On November 15, 2012, the Trustee filed its "Suggestion of Bankruptcy," informing the Court that Southwind Hospice, Inc. ("Debtor") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Kansas, Case No. 12-23053.[5] The Suggestion of Bankruptcy further alleges that:

> counsel for the Debtor has taken the position that the funds at issue in this case, now being held by Plaintiff in the Debt Service Fund and in the Debt Service Reserve Fund, are property of the bankruptcy estate and are subject to the jurisdiction of the Bankruptcy Court. Debtor's counsel further advises that it is Debtor's contention that further action in the above-captioned proceeding is stayed pursuant to Section 362 of the Bankruptcy Code as of the Petition Date (the "Automatic Stay"). Any action taken with respect to the above-described Funds without obtaining relief from the Automatic Stay from the Bankruptcy Court would as a result be void *ab initio* and could be subject to findings of contempt and assessment of penalties and fines, as appropriate.[6]

The Trustee then filed the instant motion to refer this matter to the Bankruptcy Court.[7]

---

[2] Doc. 15.

[3] *See* Doc. 19.

[4] Doc. 18.

[5] Doc. 42.

[6] *Id.*

[7] The Court notes that the Trustee requested oral argument on its motion. The Court does not find that oral argument would be helpful and denies such request.

## II.     Discussion

"District courts have jurisdiction to hear 'all civil proceedings arising under title 11, or arising in or related to cases under title 11.'"[8] In turn, 28 U.S.C. § 157(a) allows the district courts to refer such matters to the bankruptcy courts.[9] The Tenth Circuit has noted that:

> "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments, subject to review" by the district court or the bankruptcy appellate panel. . . . In addition, "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," in which situations the bankruptcy court submits proposed findings of fact and conclusions of law to assist the district court to make a final decision.[10]

This Court must determine whether this case is "related to" the bankruptcy case, thus warranting reference of this matter to the Bankruptcy Court. The Tenth Circuit has adopted the "conceivable effect" test for determining whether a civil proceeding "relates to" a bankruptcy case:

> "[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." . . . Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling

---

[8]*In re Johnson*, 575 F.3d 1079, 1082 (10th Cir. 2009) (quoting 28 U.S.C. § 1334(b)).

[9]*Id.*; *see also* D. Kan. Rule 83.8.5 ("all Title 11 cases and proceedings in, under, or related to Title 11 continue to be referred to the bankruptcy judges of this district.").

[10]*Johnson*, 575 F.3d at 1082 (citing 28 U.S.C. § 157(b)(1) and (c)(1)); *see also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, __ B.R. __, 2013 WL 67605 *9 (S.D.N.Y. Jan. 4, 2013) (finding that the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011) did not conflict with its holding that Bankruptcy Courts are still free to issue proposed findings of fact and conclusions of law).

and administration of the bankruptcy estate.[11]

This case involves bonds that were issued pursuant to the Indenture.[12] Payment of the bonds was secured in part by a pledge and assignment of interest in a lease in which Debtor was the tenant. Defendant owns bonds in the amount of $100,000, which were scheduled to mature on January 1, 2010. Bonds owned by Bondholders other than Defendant were also scheduled to mature on January 1, 2010, and at various times after that date. Debtor's lease payments were to be used as payment on the outstanding bonds. Debtor has defaulted under the lease and failed to make required lease payments.

The parties dispute whether the Trustee was required on January 1, 2010, to pay the outstanding principal and interest on the bonds owned by Defendant. The Trustee argues that it owes an equal duty to all Bondholders to act for the benefit of all, and further maintains that it has discretion to retain funds as a matter of fundamental fairness to all Bondholders, citing the following provision in the Indenture dealing with the application of money received after the Debtor defaulted under the lease:

> Whenever moneys are to be applied by the Issuer or the Trustee pursuant to the provisions of this Section, such moneys shall be applied at such times, and from time to time, as the Trustee in its sole discretion determines, having due regard to the amount of such moneys available for application and the likelihood of additional moneys available for such application in the future . . . .[13]

The Trustee alleges that it does not possess sufficient funds to make all payments due under the Indenture, Debtor does not possess sufficient funds to make up the difference, and

---

[11] *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir.1990) (citations omitted).

[12] The Court is summarizing the facts alleged by the parties for purposes of this motion only.

[13] Doc. 44 at 4.

Debtor thus intends to propose a Chapter 11 plan, in which all Bondholders will be designated as a class with equal treatment at less than full payment. The Trustee asserts that it intends to recommend to all Bondholders to accept less than full payment. The Trustee also states that it has sent a notice to the Bondholders, requesting written approval from Bondholders owning at least 51 percent of the aggregate principal amount of the outstanding bonds to enter into a settlement with the Debtor. Pursuant to the settlement, the Debtor would pay the Trustee under its proposed Plan of Reorganization an amount equivalent to 40 percent of the outstanding principal amount of the bonds.[14] The Trustee argues that if Defendant were paid more than the class of Bondholders in the Debtor's proposed Chapter 11 plan because of a separate payment from the Trustee ordered by this Court, it would clearly affect Debtor's ability to confirm a Chapter 11 plan in its bankruptcy case because the reserve funds and Debtor's contribution to those funds will form the basis for payments to all Bondholders.

Defendant is scheduled as an unsecured creditor of the Debtor with a contingent and disputed claim.[15] Debtor's counsel takes the position that the funds at issue in this case are property of the Debtor's bankruptcy estate and are stayed from further action pursuant to 11 U.S.C. § 362(a). Defendant argues that bond funds are not property of the bankruptcy estate, citing *In re Central Medical Center, Inc.*[16] However, this Court need not determine whether the funds are property of the estate in applying the "conceivable effect" test. "The proceeding need

---

[14]*See* Doc. 48-1.

[15]*See* Case No. 12-23050, Doc. 1.

[16]*In re Central Medical Center, Inc.*, 122 B.R. 568 (E.D. Mo. 1990); *see also OFFISS, Inc. V. First Union Nat'l Bank*, 562 S.E.2d 905, 909 (N.C. Ct. App. 2002).

5

not necessarily be against the debtor or the debtor's property."[17]

The Court finds that this case is "related to" the Debtor's bankruptcy case, because its outcome could conceivably have an effect on the bankruptcy estate. A "conceivable effect" is one that "*could* alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which *in any way* impacts upon the handling and administration of the bankrupt estate."[18]

The Bankruptcy Court is best equipped to handle the claims and any objections which may be raised by Defendant or other Bondholders. The Court must consider "the efficiency of receiving the recommendation of a court that possesses both intimate familiarity with the underlying liquidation and substantial expertise in the bankruptcy law that applies" and "the Bankruptcy Court should have the opportunity to apply its expertise to the complicated project of uniformly administering [the Debtor's] estate."[19]

**IT IS THEREFORE ORDERED BY THE COURT** that the Trustee's Motion for Directed Reference to the United States Bankruptcy Court for the District of Kansas (Doc. 44) is **GRANTED** and this case is referred to the United States Bankruptcy Court for the District of Kansas, based on this case's relationship to the Southwind Hospice, Inc. bankruptcy case, Case No. 12-23053.

---

[17] *In re Carlson*, 464 Fed. App'x. 845, 849, 2012 WL 1059412 *3 (11th Cir. March 30, 2012).

[18] In re *Spillman Dev. Group, Ltd.*, ___ F.3d ___, 2013 WL 757648 *2 (5th Cir. Feb. 28, 2013) (citations and quotation omitted, emphasis added).

[19] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, __ B.R. __, 2013 WL 67605 *10 (S.D.N.Y. Jan. 4, 2013) .

**IT IS FURTHER ORDERED BY THE COURT** that the Trustee's request for oral argument is **DENIED.**

**IT IS SO ORDERED.**

Dated this 7th day of June, 2013, at Kansas City, Kansas.

s/ David J. Waxse
DAVID J. WAXSE
UNITED STATES MAGISTRATE JUDGE
